UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CLIFFORD VERDON GRAHAM, ) | |
| ) | |
| Petitioner, ) | 3:05-cv-0002-RLH-RAM |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| E.K. McDANIEL, *et al.*, ) | |
| ) | |
| Respondents. ) | |

This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by Clifford Graham, a Nevada prisoner represented by counsel.

I. **Procedural History**

Petitioner was convicted following a jury trial on a charge of First Degree Murder with the Use of a Deadly Weapon. A judgment of conviction was entered in the Eighth Judicial District Court, in Clark County, Nevada on January 27, 1995. (Exhibit 27).[1]

---

[1] The exhibits referenced in this Order were submitted by petitioner in support of his federal petitions. Exhibits 1-87 were filed with the original petition. Petitioner submits exhibits 88-97 with the amended petition.

Graham filed a direct appeal, with his court-appointed counsel raising a single ground for relief, claiming insufficient evidence to convict on the charge of first degree murder with the use of a deadly weapon. (Exhibit 52). The appeal was dismissed by the Nevada Supreme Court on May 13, 1999. (Exhibit 55). Remittitur issued on June 8, 1999. (Exhibit 57).

Graham then filed a petition for writ of habeas corpus (post-conviction) in the state court, together with points and authorities to support the petition, and a motion for appointment of counsel. (Exhibits 62, 63, and 64). He raised eight grounds for relief, including claims of ineffective assistance of counsel, both trial and appellate, prosecutorial misconduct, denial of a fair trial, and due process violations based on abuse of the court's discretion. The petition was denied on April 4, 2000, with a written order entered on April 14, 2000. (Exhibit 68). Graham appealed. (Exhibit 70). The Nevada Supreme Court affirmed the petition's dismissal on May 14, 2002. (Exhibit 79).

Graham brought his initial federal petition for habeas corpus on May 16, 2002, and the federal public defender's office was appointed to provide counsel. That case was assigned number CV-N-02-0298-DWH-RAM. Ultimately, the matter was closed administratively to permit Graham to return to state court to exhaust Ground 7 of that petition. (Docket #25).

Graham filed a second state post-conviction petition on June 18, 2004. (Exhibit 88). He raised a single ground for relief founded on claims of ineffective assistance of counsel. The petition was denied by a written order entered on September 3, 2004. (Exhibit 9). Graham's appeal of this denial was filed on September 22, 2004. (Exhibit 95). The Nevada Supreme Court affirmed the denial of the second state post-conviction petition on December 2, 2004. (Exhibit 96). Graham returned to this Court on December 22, 2004. The Federal Public Defender was reappointed and an amended petition was filed. (Docket #3). The petition raises seven grounds for relief.

On May 2, 2005, respondents moved to dismiss the petition. (Docket #7). By order filed January 11, 2006, this Court dismissed Grounds 5 and 7 of the amended petition as procedurally defaulted. (Docket #13). In the same order, respondents were directed to file an answer

as to Grounds 1-4, and 6 of the amended petition. (Docket #13). On March 1, 2006, respondents filed an answer. (Docket #14). On March 31, 2006, petitioner filed a reply. (Docket #15). The Court now turns to the merits of the remaining grounds of the amended petition.

## II.     Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Discussion

#### A. Ground One

Petitioner claims that he was denied his due process rights because there was insufficient evidence presented at trial to support a finding of guilt of the crime charged beyond a reasonable doubt.

When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the Court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000). The Court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the Court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (*en banc*). The credibility of witnesses is beyond the scope of the Court's review of the sufficiency of the evidence.

1  *See Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  Under the *Jackson*
2  standard, the prosecution has no obligation to rule out every hypothesis except guilt.  *Wright v. West*,
3  505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;  *Schell*, 218 F.3d at 1023.
4  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of evidence.  *Jones v.*
5  *Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

6          The Nevada Supreme Court ruled as follows on petitioner's claim that there was
7  insufficient evidence to support his conviction:

8          Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by
9  a rational trier of fact."  See Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980).  In particular, we note that several witnesses testified that
10  appellant and the victim, Yvound Williams, had lived together, and that appellant became angry when the relationship ended.  Appellant
11  expressed to several people the desire to kill Yvound and members of her family.  In the evening of April 3, 1992, appellant went to
12  Yvound's house.  Appellant waited in his car until morning, when Yvound came home from work.  When Yvound came home, appellant
13  went inside the house with her.  After Yvound ate, she, appellant, and Yvound's daughter Jackie all went upstairs.  Jackie had been instructed
14  by her brother not to leave Yvound alone with appellant.  Appellant and Yvound argued, then stopped arguing.  Yvound told Jackie it was
15  all right to leave them, and Jackie went downstairs to receive some telephone calls. Then Jackie watched television downstairs with some
16  other occupants of the house.  After Yvound had been alone with appellant for about an hour, Jackie and the others heard a rattling at the
17  door.  Yvound came into the room, reached for the telephone, and called 911.  There was blood shooting from her neck, and she could
18  not speak.  Then, Yvound grabbed a gun from the closet and headed toward the door.

19

20          There was conflicted evidence whether medical personnel had enlarged the wound in their efforts to save Yvound, but it was clear
    that the original wound was a mortal wound.  The forensic pathologist
21  who conducted the autopsy testified that Yvound had died as a direct result of a homicidal injury, specifically, a cut to the neck that went
22  through her windpipe and almost completely through her left internal jugular vein.  There was blood in her lungs and a defensive wound on
23  one finger.  A knife that appellant was known to carry was found near the crime scene, with blood on it of the same type as Yvound's blood
24  type.

25          The jury could reasonably infer from the evidence presented that appellant had murdered Yvound with the use of a deadly weapon.
26

> It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, sufficient evidence supports the verdict. See Bolden v. State, 97 Nev. 71, 624 P.2d 20 (1981).

This Court agrees with the conclusion of the Nevada Supreme Court. This Court has reviewed the record, and after viewing the evidence in the light most favorable to the prosecution, concludes that any rational trier of fact could have found the petitioner guilty of murder with the use of a deadly weapon. The Nevada Supreme Court's ruling that there was sufficient evidence to support petitioner's conviction was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and that ruling was not based on an unreasonable determination of facts in light of the evidence. 28 U.S.C. § 2254(d). The Court will deny habeas relief with respect to Ground One.

**B. Ground Two**

Petitioner claims that he was denied his right to effective assistance of counsel because counsel failed to challenge the deadly weapon enhancement.

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

With respect to Ground Two, petitioner claims that trial counsel was ineffective because counsel failed to challenge the deadly weapon enhancement. Specifically, petitioner claims that counsel should have objected to jury instruction number 12. Jury instruction number 12 read as follows:

> A deadly weapon is any instrumentality which is inherently dangerous. Inherently dangerous means that the instrumentality, object or weapon itself, if used in the ordinary manner contemplated by its design and construction, will or is likely to, cause a life-threatening injury or death.
>
> In this case the State has alleged that the deadly weapon used was a knife and in order to find the defendant guilty of murder you must find beyond a reasonable doubt that both a knife was used in the commission of the offense and that the knife was a deadly weapon.
>
> A knife is a deadly weapon if when used in the [insert caret] manner contemplated by its design and construction, it will or is likely to, cause a life-threatening injury or death.

(Exhibit 42; Instruction 12).

1   Petitioner claims that the instruction erroneously informed the jury that a deadly
2   weapon finding was an element of proving murder.  Petitioner also claims that omitting the word
3   "ordinary" from the third paragraph of the instruction (where the caret is) was erroneous.  Petitioner
4   further claims that the instruction failed to instruct the jury that it had to make a particularized deadly
5   weapon finding.  Petitioner hypothesizes that these alleged defects made the instruction inconsistent
6   with Nevada law at that time, as set forth in *Zgombic v. State*, 106 Nev. 571, 798 P.2d 548 (1990).
7   Jury instruction 12 was taken nearly word-for-word from the *Zgombic* case.  798 P.2d at 550-551.
8   Petitioner has not met either prong of the *Strickland* test: petitioner has not demonstrated that
9   counsel's failure to challenge instruction 12 fell below an objective standard of reasonableness, nor
10  has petitioner demonstrated that, but for counsel's alleged unprofessional errors, the result of the
11  proceeding would have been different.  Petitioner has failed to demonstrate that the state courts'
12  ruling on this issue was contrary to, or an unreasonable application of, clearly established federal
13  law, as determined by the Supreme Court of the United States, and that ruling was based on an
14  unreasonable determination of facts in light of the evidence.  28 U.S.C. § 2254(d).  The Court will
15  deny habeas relief with respect to Ground Two.
16     **C.  Ground Three**
17     Petitioner claims that he was denied his right to effective assistance of counsel when
18  trial counsel failed to object to the autopsy photograph depicting the victim's wound.  Petitioner
19  contends that the photograph inaccurately depicted the victim's wound; that the actual wound was
20  two centimeters in diameter; that the photograph, taken after the medical procedures were performed,
21  depicts a larger, 3 and ½ inch diameter area of exposed blood red flesh.  (Exhibit 83).  Petitioner
22  contends that this was mistakenly identified by the medical examiner as the wound area.
23     While claims or error from an allegedly erroneous admission of photographs will not
24  state a federal claim, a claim of violation of due process may arise from the introduction of gruesome
25  photographs of the victim.  *Batchelor v. Cupp*, 693 F.2d 859 (9th Cir. 1982).  However, reversal will
26

not occur unless the trial is rendered fundamentally unfair as a result of the introduction of the photographs. *Id.* Admission rests largely in the discretion of the trial court. *Id.* The Ninth Circuit has ruled that a claim of erroneous admission of gruesome photographs is not cognizable and does not raise the specter of fundamental unfairness. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997). This Court may consider whether the admission of evidence so infected petitioner's trial with unfairness as to render the verdict a denial of due process. *See Romano v. Oklahoma*, 512 U.S. 1, 12 (1994).

This Court cannot say that the introduction of the autopsy photograph depicting the victim's wound so infected the trial with unfairness as to render the verdict a denial of due process. The Nevada Supreme Court rejected petitioner's claim as follows: "The autopsy photographs were properly admitted because the photographs aided the medical examiner in explaining the victim's injuries." (Exhibit 77, at p. 2 (footnote omitted)). The factual findings of the state district court and the Nevada Supreme Court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court will deny habeas relief with respect to Ground Three.

**D. Ground Four**

Petitioner claims that he was denied his right to effective assistance of counsel when counsel failed to include the trial court's denial of a jury bias mistrial motion as a direct appeal issue. Petitioner claims that alternate juror Salazar said, after the jury was selected but before opening arguments, that she heard another juror say the words "gas chamber" or "electric chair" in the presence of other jurors. The trial court denied petitioner's motion for mistrial because there was no proof of juror bias that tainted the jury. The Nevada Supreme Court considered the facts surrounding

1  the jury bias claim and ineffective assistance of counsel claim, and concluded that the trial court did
2  not err in denying the claim when it was raised in petitioner's state habeas petition. (Exhibit 77, at
3  pp. 3-4). The factual findings of the state district court and the Nevada Supreme Court are presumed
4  correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada
5  Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly
6  established federal law, as determined by the United States Supreme Court, or that it was based on an
7  unreasonable determination of the facts in light of the evidence presented in the state court
8  proceeding. The Court will deny habeas relief with respect to Ground Four.

### E. Ground Six

Petitioner claims that he was denied his right to effective assistance of counsel when counsel failed to include the prosecution's alleged misconduct in knowingly using perjured testimony to convict him as a direct appeal issue. Specifically, petitioner asserts that witness Norwood's preliminary hearing testimony regarding his knowledge of petitioner's possession of knives differed from his testimony at trial. Petitioner has not met either prong of the *Strickland* test: petitioner has not demonstrated that counsel's failure to include this issue on appeal fell below an objective standard of reasonableness, nor has petitioner demonstrated that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Petitioner has failed to demonstrate that the state courts' ruling on this issue was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, and that ruling was based on an unreasonable determination of facts in light of the evidence. 28 U.S.C. § 2254(d). The Court will deny habeas relief with respect to Ground Six.

## IV.  Certificate of Appealability

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir.

2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**V.    Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED IN ITS ENTIRETY.**

**IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

DATED this ____6th____ day of _____March_____, 2008.

_____
ROGER L. HUNT
Chief United States District Judge